Boston Molasses Company v. Commissioner.
Boston Molasses Co. v. Commissioner
Docket No. 957.
United States Tax Court
1944 Tax Ct. Memo LEXIS 50; 3 T.C.M. (CCH) 1190; T.C.M. (RIA) 44362; November 8, 1944
*50 Morton L. Deitch, Esq., 61 Broadway, New York, N. Y., for the petitioner. Thos. R. Charshee, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The respondent has determined a deficiency of $3,522.83 in petitioner's income tax for its fiscal year ended June 30, 1941. Petitioner claims an overpayment of $471.38. The only question involved is whether petitioner is entitled to a deduction of $14,668.35, the unrecovered cost of a bulkhead on petitioner's water-front land, said by petitioner to have been abandoned. The facts are as follows: Findings of Fact The petitioner is a corporation, organized under the laws of Massachusetts, and has its main plant in Boston. It is a subsidiary of the American Molasses Company. The petitioner filed its corporation income, declared value excess profits, and defense tax return for its taxable year ended June 30, 1941, with the collector of internal revenue for the district of Massachusetts on September 13, 1941. It kept its books on the accrual basis. In this return petitioner claimed a deduction in the amount of $14,668.35 as an "abandonment loss" and the following statement was attached to the return: "During the fiscal year *51 ended June 30, 1941, Boston Molasses Co. was party to a transaction in which it exchanged unimproved land for a right of way easement over adjoining land. No cash entered into the transaction. No gain or loss was recognized on the exchange." The petitioner is engaged in the business of manufacturing and selling molasses. Raw molasses is imported and delivered to it by tank steamers which require dockage facilities at or near its place of business. The raw molasses is pumped from the steamers through pipe lines into large steel storage tanks on the land adjoining petitioner's plant. Since a gallon of molasses weighs 12 pounds, these tanks create tremendous pressure upon the earth. Petitioner erected before 1917 a plant near Boston Harbor in South Boston, on land owned by the United States and the Commonwealth of Massachusetts, which was leased by petitioner on the understanding that upon sixty days' notice by the Federal Government, petitioner should vacate the land. On September 24, 1940, the Federal Government gave notice to petitioner to vacate the land. In 1917 petitioner had purchased land about three miles distant from its plant and on a body of water known as Reserve Channel. *52 This land was acquired as a site for its plant and heavy equipment in the event the Federal Government should terminate its lease to petitioner, as at that time seemed likely because of the war. About the year 1922 petitioner erected at a cost of $37,853.92 a bulkhead between the water and the Reserve Channel land it had purchased to hold back the land on one side and the water on the other. Since petitioner intended to use the adjoining land for its plant and heavy equipment in the contingency mentioned, the bulkhead was made proportionately strong. When the petitioner received notice from the United States in September 1940 to vacate the leased land, it sent an engineer employed by its parent company to examine the bulkhead on the Reserve Channel land. He found it to be in very poor condition, the timbers rotted and attacked by a marine worm; the water having penetrated on the north end some 30 or 40 feet. He reached the conclusion that the bulkhead in such a condition would not support the weight of petitioner's plant and heavy equipment if removed to petitioner's land. The engineer called into consultation a Boston firm of engineers and the dockbuilders' firm which had built *53 the bulkhead, and the opinion of both confirmed his own. Petitioner did not keep the bulkhead in proper repair and its condition in 1940, therefore, was the result of gradual decay. To put the bulkhead in a condition to support the necessary operational equipment, the engineer concluded that it would require an expenditure of between $35,000 and $40,000, and he did not consider it economically sound for petitioner to make such an expenditure. Having reached this conclusion, the engineer sought to find a suitable place in Boston harbor or Charlestown for petitioner's dock, and finally concluded an arrangement with the White Fuel Corporation which owned land adjoining petitioner's Reserve Channel land. On February 14, 1941, petitioner transferred the bulkhead and part of its adjoining land to the White Fuel Corporation in exchange for the right to use for twenty-five years the wharf and dockage facilities and certain rights of way over the land of that corporation. After the transfer, petitioner erected large tanks on a portion of the Reserve Channel land retained by it. This necessitated a restoration to adequate strength of a portion of the bulkhead which had been transferred to the *54 White Fuel Corporation, the expense of which was borne by both corporations. The Commonwealth of Massachusetts had refused a permit to petitioner to erect its largest tank, of 1,800,000 gallons capacity, until the bulkhead immediate to the land on which it would be built should be erected, and the new work consisted in installing sheet-steel piling in the room of part of the old bulkhead here in question. From 1923 to 1941 petitioner claimed and was allowed depreciation on the bulkhead in its income tax returns and at the time of the transfer of the bulkhead to the White Fuel Corporation on February 14, 1941, its undepreciated cost was $14,668.35. The rate of depreciation allowed was 5 percent until 1930, and thereafter only 2 percent. Opinion KERN, Judge: The petitioner claims a loss under section 23 (f), Internal Revenue Code, [1] on the abandonment of its bulkhead erected on Reserve Channel in Boston harbor in 1917, in the amount of $14,668.35, which represents the unrecovered balance of cost, which was $37,853.92. *55 While the evidence discloses that the bulkhead in question was held by petitioner until the taxable year for a business purpose and was discovered in that year to have deteriorated to an extent which made it impossible for petitioner to use it for the particular purpose for which it was intended, there is no evidence to support a conclusion that it was worthless in the taxable year. Petitioner intended to place upon the land supported by the bulkhead large storage tanks holding a heavy fluid (molasses) weighing 12 pounds per gallon. Petitioner's witness testified that "this bulkhead would not safely and properly hold the loads that we were going to have to place on it"; and, further, "that if we were to drive a row of sheet metal piling between the existing bulkhead and the soil, that it would then carry the loads that we had to place on it". We are unable to conclude from this testimony that it had no value. A bulkhead might be useful in holding back the land on one side and the water on the other when the land was not used for holding heavy storage tanks, and therefore be valuable, even though it could not be used for petitioner's particular purposes. Even though only the piling *56 was left on the north end and the timber-work along the west side was wormeaten, it might have been possible, so far as the record shows, to have repaired it at small expense so that it would have served for ordinary purposes. Therefore, nothing in the record justifies the conclusion that the land transferred by petitioner to the White Fuel Corporation was worth no more with the bulkhead upon it than it would have been without the bulkhead. Neither are we able to conclude, as petitioner would have us do, that petitioner abandoned the bulkhead. Petitioner exchanged certain of its land, including the larger part of the bulkhead in question, in return for dockage rights and rights of way granted to it by the White Fuel Corporation. There is no testimony as to the value of those rights, but that they had value, especially to petitioner, can not be questioned. Petitioner contends that since the bulkhead in question was useless to it, the bulkhead was worthless and would not have figured as a consideration in the exchange. As we have pointed out we are unable to agree with this contention. As we view the case, petitioner exchanged land of undisclosed value plus a bulkhead of undisclosed *57 value for certain rights of way, dockage rights and other contractual rights, all of undisclosed value. Holding this view of the transaction we are unable to hold that petitioner sustained a loss in the amount claimed or in any amount ascertainable from the record. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. (f) Losses by Corporations. - In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.↩